UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HENRY PAUL REGAN,<br><br>Defendant. | SEALED INDICTMENT<br><br>25 Cr.<br><br>25 CRIM 183 |

### COUNT ONE
### (Conspiracy to Commit Securities Fraud and Wire Fraud)

The Grand Jury charges:

### Overview

1.  From at least in or about 2022 through at least in or about December 2024, HENRY PAUL REGAN, the defendant, and a team of salesmen and associates defrauded hundreds of retail investors by offering investment products through two entities called Next Level Holdings ("Next Level") and Yield Wealth Ltd. ("Yield") based on false and misleading statements. REGAN and his co-conspirators misrepresented how Next Level and Yield would use investors' money and what protections investors would have against losses. These misrepresentations fraudulently induced over 300 people to invest more than $60 million in the Next Level and Yield investment products. When REGAN's fraud was eventually exposed, REGAN closed Next Level and Yield, leaving investors with over $50 million of losses.

### Next Level Notes

2.  At all times relevant to this Indictment, HENRY PAUL REGAN, the defendant, advertised himself as the Chief Executive Officer of Next Level. REGAN claimed that Next Level was in the business of providing capital and operational support to mining operations in Colombia. In exchange for this support, Next Level supposedly received precious metals at discounted prices,

which Next Level sold at a profit.

3. In at least in or about mid-2022, HENRY PAUL REGAN, the defendant, and others began using Next Level to sell what REGAN called "Next Level Holdings Principal & Interest Protected Guaranteed Note[s]" (the "Next Level Notes"). REGAN sold Next Level Notes himself and recruited independent salespeople to sell Next Level Notes using information and sales techniques that REGAN and others working at Next Level provided.

4. According to marketing materials that HENRY PAUL REGAN, the defendant, circulated to investors and salespeople, investors who purchased Next Level Notes were guaranteed to receive double-digit returns, with no risk of loss, through Next Level's precious-metals business. For example:

    a. Next Level's marketing materials represented that investors who made a minimum investment of $50,000 could purchase a Next Level Note with a term of 3, 5, 7, or 10 years. Each Note came with a contractually guaranteed double-digit annual yield—typically between 12% and 15% depending on the duration of the Note.

    b. Next Level's marketing materials represented that each Next Level Note came with a "noncancelable indemnity or surety bond backed by an insurance company that guarantee[d] that principal and interest will be paid in compliance with the contractual agreement or promissory note." This meant that holders of Next Level Notes "[could not] lose their principal investment and also serve[d] as a guarantee that [investors] will receive the interest offered in our enhanced annuity note offering in full."

5. The Next Level marketing materials that HENRY PAUL REGAN, the defendant, circulated also made representations about how Next Level would use investor funds and how it planned to protect investors from losses:

   a. With respect to returns, the marketing materials represented that Next Level had a successful track record in "gold and precious metals trade finance operations," and that Next Level would use investor funds to finance mining operations and generate returns from selling precious metals.

   b. As for protections, the marketing materials represented that Next Level would obtain for investors "full insurance protections" from a handful of companies, including a Colombian entity ("Company-1") and an American reinsurance company ("Company-2"). The marketing materials said that this insurance was designed to offer noteholders "ultimate safety and peace of mind for your retirement portfolio in these very uncertain times."

  6. Next Level issued each investor who purchased a Next Level Note a "Fully Insured Secured Promissory Note," which set forth the terms of the investment (including the principal amount and interest rate) and included an "Unconditional Loan Guarantee," representing that Next Level would provide the investor "with a noncancelable surety bond, or other like insurance policy or product to serve as an unconditional guarantee for the Holder that he shall receive payment of both principal and interest on this note."

  7. Consistent with that representation about insurance, Next Level also sent investors two insurance-related documents: First a document titled a "Surety Bond Contract," purportedly from Company-1, which guaranteed that Company-1 would pay the noteholder the full amount of principal and interest Next Level owed under the note, in the event Next Level did not pay. And second a document titled a "Reinsurance Cover Note," purportedly from Company-2, which guaranteed that Company-2 would also insure the noteholder up to the full amount of principal and interest payments required under the terms of the note.

  8. Between 2022 and late 2024, Next Level sold approximately 300 Next Level Notes

to investors, including to at least one investor located in the Southern District of New York. In total, the investors in Next Level Notes sent more than $45 million to business entities under the control of HENRY PAUL REGAN, the defendant.

## Yield Term Deposits

9. In or about early 2024, HENRY PAUL REGAN, the defendant, and others launched a new business venture called Yield, which REGAN advertised as an alternative to traditional banks that could offer investors higher returns on their savings and greater protections.

10. In or about March 2024, HENRY PAUL REGAN, the defendant, began using Yield to sell what he called "Mega High Yield Term Deposit[s]" and "Super High Yield Term Deposit[s]" (collectively, the "Yield Term Deposits"). As with Next Level Notes, REGAN sold Yield Term Deposits himself and recruited independent salespeople to sell Yield Term Deposits using information and sales techniques that REGAN and others working at Yield provided.

11. Much like with Next Level Notes, HENRY PAUL REGAN, the defendant, circulated marketing materials to investors and salespeople, claiming that investors in Yield Term Deposits were guaranteed to make significant returns with no risk. For example:

   a. Yield marketing materials described Yield as "revolutionizing the banking industry with Enhanced Term Deposits, offering yields up to 10.5% APY and security through insurance coverage up to $10 million." The materials went on to explain that investors could invest in Yield Term Deposits, with terms of between five and 10 years. Investors would receive guaranteed interest payments each year, with rates ranging up to 10.5% per year, depending on the term of the deposit and other payment options the investor selected. The marketing materials represented that interest payments and investors' principal would be fully insured, stating that "[y]our APY is 100% guaranteed and insured" and that Yield Term Deposits "offer[] additional

insurance on deposits up to $10 million, ensuring unparalleled security for your savings."

        b.      Similarly, Yield's website advertised Yield as a new, digital bank that gave investors access to better interest rates and protections than traditional financial institutions. The website allowed investors to calculate returns they would receive from different Yield Term Deposits and touted that Yield Term Deposits were backed by insurers who "provid[e] our depositors the ultimate in insurance protection for both . . . principal and interest."

        c.      Yield's website claimed that Yield would generate returns for investors through a "diverse portfolio that spans multiple industries, including the lucrative sectors of mining and rare minerals." REGAN separately represented to investors and people selling Yield Term Deposits that Yield would also use investor funds to make investments in plans related to the Affordable Care Act.

12.      Yield sent investors who purchased Yield Term Deposits a "Subscription Agreement" and a "Limited Partnership Agreement," through which the investors purchased units in either the Mega High-Yield Term Deposit LP or the Super High-Yield Term Deposit LP. The agreements represented, among other things, that investors would receive "an annual percentage yield of no less than" between 5.5% and 8.5%, depending on the type of investment.

13.      Over the course of 2024, over Yield sold approximately 85 Yield Term Deposits, totaling more than $15 million deposited by investors.

### The Defendant Defrauded Investors

14.      The promises that HENRY PAUL REGAN, the defendant, and others made to investors about how Next Level and Yield would use their money and protect their investments were materially false and misleading.

15.      When HENRY PAUL REGAN, the defendant, promoted Next Level Notes and

Yield Term Deposits, a core component of that pitch was that Next Level and Yield would use investors' money to generate significant returns, including through precious-metals operations and investments related to the Affordable Care Act. Those claims were false and misleading. In reality, REGAN and his co-conspirators ran Next Level and Yield like a Ponzi scheme, using money obtained from earlier investors to pay later investors and to pay commissions to salespeople. Meanwhile, Next Level and Yield made no meaningful investments in either precious-metals operations or investments related to the Affordable Care Act. Instead, REGAN and his co-conspirators misappropriated investor money, which included using investor funds for personal payments and sending large sums of money to entities that did not generate returns for Next Level or Yield, let alone investors.

16. Another important representation that HENRY PAUL REGAN, the defendant, made when marketing Next Level Notes and Yield Term Deposits was that investors would have insurance to guarantee promised interest payments and prevent them from losing their investments. Those representations were also false and misleading.

17. Next Level did not obtain insurance for the vast majority of noteholders and did not maintain insurance for any of them. Specifically, between in or about 2022 up to and including late 2023, Next Level obtained authentic surety bonds from Company-1 and reinsurance from Company-2 for approximately 70 Next Level Notes, with a total investment value of approximately $7.75 million. Next Level then stopped paying to maintain that coverage and did not purchase any surety bonds or reinsurance for the more than 200 Next Level Notes it issued over the course of 2024. Instead, Next Level sent the investors who purchased those notes forged surety bonds and forged reinsurance paperwork. REGAN and his co-conspirators also furthered this fraudulent scheme by sending investors and salespeople forged letters that appeared to come

from a senior executive at Company-1 and represented that Company-1 would insure more than $100 million of Next Level Notes. Similarly, notwithstanding the representations that Yield Term Deposits had insurance to guarantee interest payments and protect up to $10 million of principal, Yield did not purchase or maintain insurance for Yield Term Deposits.

### Investors Suffered Significant Losses

18. On or about August 30, 2024, a news outlet published an article about Yield and HENRY PAUL REGAN, the defendant, expressing skepticism about Yield. REGAN responded to the article by holding a videoconference with salespeople, in which REGAN claimed that the article was false and misleading and urged salespeople to continue selling Yield Term Deposits.

19. In or about November 2024, Next Level and Yield closed, leaving investors with over $50 million of losses. Because Next Level and Yield did not purchase or maintain insurance, investors have not been able to recover for those losses.

## STATUTORY ALLEGATIONS

20. From at least in or about 2022 through at least in or about December 2024, in the Southern District of New York and elsewhere, HENRY PAUL REGAN, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit an offense against the United States, to wit, (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) wire fraud, in violation of Title 18, United States Code, Section 1343.

21. It was a part and an object of the conspiracy that HENRY PAUL REGAN, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce, and of the mails and of a facility of a

national securities exchange, would and did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

22. It was a further part and an object of the conspiracy that HENRY PAUL REGAN, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Overt Acts

23. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

   a. On or about August 23, 2024, HENRY PAUL REGAN, the defendant, sent an email to a Yield salesperson, approving an email the salesperson planned to send investors that described Yield Term Deposits as being "[f]ully insured for principal & interest."

      b.      On or about September 4, 2024, REGAN held a videoconference with Yield salespeople, in which REGAN defended the Yield Term Deposits against allegations that, among other things, the product was too good to be true.

      c.      On or about October 4, 2024, REGAN sent an email thanking an investor for purchasing Next Level Notes and describing the insurance protections for those notes.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

24.    The allegations contained in paragraphs 1 through 19 of this Indictment are repeated and realleged as if fully set forth herein.

25.    From at least in or about 2022 through in or about December 2024, in the Southern District of New York and elsewhere, HENRY PAUL REGAN, the defendant, willfully and knowingly, directly and indirectly, by the use of a means and an instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, HENRY PAUL REGAN engaged in a scheme to defraud prospective investors in Next Level Notes and Yield Term Deposits through false and misleading statements about how Next Level and Yield would use investors' money and the protections investors would have against

losses.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT THREE
### (Wire Fraud)

The Grand Jury further charges:

26. The allegations contained in paragraphs 1 through 19 of this Indictment are repeated and realleged as if fully set forth herein.

27. From at least in or about at least in or about 2022 through in or about December 2024, in the Southern District of New York and elsewhere, HENRY PAUL REGAN, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, REGAN engaged in a scheme to defraud prospective investors in Next Level Notes and Yield Term Deposits through false and misleading statements about how Next Level and Yield would use investors' money and the protections investors would have against losses, and in furtherance of that scheme used interstate wires, some of which were transited to, from, or through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
## (Aggravated Identity Theft)

The Grand Jury further charges:

28. The allegations contained in paragraphs 1 through 19 of this Indictment are repeated and realleged as if fully set forth herein.

29. From at least in or about 2022 through at least in or about December 2024, in the Southern District of New York and elsewhere, HENRY PAUL REGAN, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, HENRY PAUL REGAN used the names and signatures of employees of Company-1 and Company-2 during and in relation to the wire fraud violation charged in Count Three of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(b), and 2.)

## FORFEITURE ALLEGATIONS

30. As a result of committing one or more of the offenses charged in Counts One, Two, and Three of this Indictment, HENRY PAUL REGAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

Substitute Assets Provision

31. If any of the above-described forfeitable property, as a result of any act or omission by the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

_____       *Jay Clayton*
GRAND JURY FOREPERSON         JAY CLAYTON
                                            United States Attorney